### WIDMER v. SIPP.

(Court of Appeals of District of Columbia. Submitted March 14, 1922. Decided April 3, 1922.)

#### No. 1481.

Patents ⊕═93—Dominating feature of one of seven counts held not mere ancillary invention by employee.

In interference proceedings between the president of a machine company and an employee, involving seven counts relating to an automatic feed mechanism for drill presses, the invention of the subject-matter of count 6, which covered particularly planetary gearing, *held* not a mere ancillary improvement on the regular machines of the company, but an invention, as to which the employee was entitled to priority, but the employee's claim as to the other six counts *held* not sustained.

Smyth, Chief Justice, dissenting in part.

Appeal from the Commissioner of Patents.

Interference proceeding between Charles A. Widmer and Grant Sipp. From a decision of the Commissioner of Patents, awarding priority of invention to Sipp, as to all seven counts in interference, Widmer appeals. Affirmed as to six of the seven counts, and reversed as to count 6.

Grafton L. McGill and Francis S. Maguire, both of Washington, D. C., for appellant.

John W. Steward, of Paterson, N. J., for appellee.

ROBB, Associate Justice. Appeal from a decision of the Patent Office in an interference proceeding awarding priority of invention to the senior party and patentee, Sipp, who filed no preliminary statement and took no testimony, and who, therefore, is restricted to his filing date, July 10, 1917, for conception and constructive reduction to practice.

The invention as described by the Assistant Commissioner—

"is an automatic feed mechanism for drill presses. The drill carrier is normally held in its uppermost position by suitable spring devices, and is started downwardly by the operator, but, when it reaches a predetermined position, a connection is made automatically, whereby it is power-fed a definite distance, and then automatically released and returned to its normal elevated position."

Of the seven counts of the interference, the first and sixth are sufficiently illustrative and are here reproduced:

"1. In combination, the frame, a tool carrier, including means movable in a definite direction therein, a going driving means, and a power-transmitting coupling to connect said means with each other, including a master member movable to one position to make, and to another position to break, the coupling, and normally occupying one of said positions, said first-named means having means to move the master member during the movement in one direction of said first means."

"6. In combination, the frame, a tool carrier, including train including a rotary driven member, a rotary driving gear member, a free rotary gear, said members and the gear being concentric, a pinion meshing with the gear and journaled in one and meshing with the other of said members, and a rotation preventing detent device for the gear movable into and out of locking relation thereto and actuable by part of said train."

In October of 1913 Widmer, who was highly skilled in this art, entered into a contract with the Sipp Machine Company, of which appellee was president, to develop and build a model of a sensitive drill press, and to sell the same when manufactured by the company. This contract was to remain in force until September 8, 1918, but on June 3, 1916, a second contract was entered into between the parties, which provided that the first contract was to expire on September 7th following, when the second contract was to take effect. This second contract related to the sale by Widmer to the trade of "quick change speed sensitive drilling machines" and other machine tools then being manufactured by the company. There is no express provision in either contract as to who shall have title to any inventions that may be made.

In the fall of 1916 Widmer, who was endeavoring to devise a drill press of this sort, obtained the services of the company's expert draftsman, Zabriskie, who, under Widmer's directions, prepared drawings of the invention which are in evidence in this interference. Thereupon a machine substantially like the drawings was constructed early in January of 1917, and tested in the factory of the company, where Zabriskie and others saw it operated. It then was sent to New York, where it was exhibited at the Automobile Show. Mr. Widmer testified that one order was received from "a Mr. Edge, at that time general superintendent of the Locomobile Company, at Bridgeport, Conn."; that Mr. Humphreys, his assistant, was with him at the time, and that, while the order placed was verbal, it later was "confirmed by a regular order

from the company." This order, according to the recollection of the witness, "was filled some time in March, 1917." No attempt was made to meet this testimony, although the means were at hand, had the testimony been incorrect. The machine subsequently constructed, while differing somewhat in mechanical detail, was not patentably different from the earlier machine. As stated by the Examiner of Interferences:

"The step from the first to the second form of the invention was no more than the embodiment of the same broad invention in another species."

The Examiner further said:

"It is clear from the record that he (Widmer) alone originated the broad invention in the first machine. * * *"

The Examiner therefore awarded priority to Widmer as to all the counts.

The Examiners in Chief were satisfied that the operation of the earlier machine constituted reduction to practice, and so ruled. But, while satisfied that Widmer was the inventor of the subject-matter of count 6, which relates particularly to the planetary gearing, the Examiners ruled against him, on the ground that this invention was but an ancillary improvement on the regular machines of the company, and hence inured to the company's benefit under the doctrine of employer and employee. The views of the Assistant Commissioner did not differ materially from those of the Board.

We are unable to accept the view that the structure disclosed by count 6 constitutes but an ancillary invention. On the contrary, we are of opinion that the planetary gearing disclosed by this claim constitutes the most essential and dominating feature of the invention, and therefore that Widmer is entitled to priority as to this claim. As to the other claims, however, we do not think Widmer has sustained the heavy burden of proof resting upon him. The question whether, as to count 6, the Sipp Machine Company will be entitled to an assignment of the patent, is not here.

The decision is affirmed as to counts 1, 2, 3, 4, 5, and 7, but reversed as to count 6.

Affirmed as to counts 1, 2, 3, 4, 5, and 7.

Reversed as to count 6.

SMYTH, Chief Justice, dissents as to claim 6, and concurs as to claims 1, 2, 3, 4, 5, and 7.